IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


HELEN ALBRECHT,

        Plaintiff,

vs.                                  Case No. 12-1169-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 31, 2009, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 25-36). Plaintiff alleges that she has been disabled since July 24, 2008 (R. at 25). Plaintiff is insured for disability insurance benefits through

4

March 31, 2011 (R. at 27). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 28). At step two, the ALJ found that plaintiff has the following severe impairments: hepatitis C, depression and schizoid personality disorder (R. at 28). The ALJ further determined that plaintiff's impairments, including her substance use disorder, meets or equals a listed impairment (R. at 28). The ALJ further determined that if plaintiff stopped the substance abuse, the remaining limitations would still constitute severe impairments (R. at 29). At step three, the ALJ determined that plaintiff's remaining impairments do not meet or equal a listed impairment (R. at 29). After determining plaintiff's RFC absent substance use (R. at 30-31), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 35). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 35-36). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 36).

**III. Did the ALJ err by failing to address whether plaintiff was of borderline age?**

Plaintiff argues that the ALJ erred by failing to consider or address the issue of whether plaintiff fell into a borderline situation on the date of the ALJ decision. At step five, the

5

burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. Thompson, 987 F.2d at 1487. The Commissioner has established three age categories: younger person (under age 50), person closely approaching advance age (50-54), and person of advanced age (55 and over). 20 C.F.R. § 404.1563 (c,d,e). Furthermore, in some circumstances, the regulations consider persons age 45-49 to be more limited than persons who have not attained age 45. 20 C.F.R. § 404.1563(c). The regulations contain the following language:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b) (2012 at 392).

Plaintiff was born on March 21, 1960 (R. at 35). The ALJ issued his decision on December 31, 2009 (R. at 36). Plaintiff was therefore 49 years and 9 months old at the time of the ALJ decision, or 80 days short of her 50th birthday. Although the ALJ noted that plaintiff was 48 years old on the alleged disability onset date, the ALJ did not mention that plaintiff was 80 days short of 50 years of age on the date he issued his decision. Plaintiff argues that the ALJ was required to address the issue of whether plaintiff, because of her age at the time of the ALJ decision, falls within a borderline situation, or whether to use the older age category because she was within 80 days of her 50th birthday at the time of the ALJ decision.

In the case of Daniels v. Apfel, 154 F.3d 1129, 1134 n.5 (10th Cir. 1998), the court held as follows:

> The ALJ never addressed the issue of whether Mr. Daniels fell within the borderline or whether he should be considered in the next age bracket. Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding. [citation omitted] Even were this considered a discretionary matter, the ALJ would have abused that discretion by failing to exercise it. [citation omitted]

If plaintiff is found to be in a borderline situation, the Commissioner must determine which of the categories on either side of the borderline best describes the claimant, and the

7

Commissioner may apply that category in using the grids. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence. Daniels, 154 F.3d at 1136.

In Daniels, the court held that plaintiff, who was 65 days short of the advanced age category, fell within the borderline situation.[2] 154 F.3d at 1133. In the case of Cox v. Apfel, 166 F.3d 346 (table), 1998 WL 864118 at *4 (10th Cir. Dec. 14, 1998), plaintiff was within 6 months of the next age category. The court held:

> Finally, because plaintiff was within six months of the next age category, that is, advanced age, at the time the ALJ issued his decision, he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids. See 20 C.F.R. §§ 404.1563(a), 416.963(a) (both stating: "[W]e will not apply these age categories [in the grids] mechanically in a borderline situation.")

In the case of Ediger v. Astrue, Case No. 11-1042-SAC (D. Kan. Jan. 3, 2012; Doc. 19 at 6-11), plaintiff was within 3 months of her 55th birthday on the date of the ALJ decision. The court held that the ALJ erred by not addressing whether the plaintiff is of borderline age before utilizing the grids. As

---

[2] The court cited to the following cases in making this finding: *Compare*, *e.g.*, Kane, 776 F.2d at 1132–33 (48 days before next age category within borderline situation); Ford v. Heckler, 572 F.Supp. 992, 994 (E.D.N.C.1983) (two months within borderline); Hilliard v. Schweiker, 563 F.Supp. 99, 101–02 (D.Mont.1983) (less than three months within borderline); Hill v. Sullivan, 769 F.Supp. 467, 471 (W.D.N.Y.1991) (three months, two days within borderline), *with* Underwood v. Bowen, 828 F.2d 1081, 1082 (5th Cir.1987) (ten months not within borderline); Lambert, 96 F.3d at 470 (seven months not within borderline). *But see* Crady v. Secretary of Health & Human Servs., 835 F.2d 617, 618–19, 622 (6th Cir.1987) (age within approximately one month of next category not necessarily within borderline).

in Daniels, the ALJ never addressed the issue of whether plaintiff fell within a borderline situation, or the issue of whether she should be considered in the next age bracket. The ALJ erred by not making the necessary factual findings on these issues.

In the case of Welch v. Astrue, Case No. 09-1411-SAC (D. Kan. Dec. 15, 2010; Doc. 14 at 10-15), plaintiff was 5 ½ months short of his 50th birthday on the date of the ALJ decision, and thus within 5 ½ months of fitting the age category of person closely approaching advanced age. The court held that the ALJ clearly erred by not addressing whether the plaintiff was of borderline age before utilizing the grids. The court further held that the ALJ must make a factual determination of whether plaintiff falls within a borderline situation, and, if so, whether he should be considered in the next age bracket.

In the case of Strauser v. Astrue, Case No. 08-1395-JTM (D. Kan. Feb. 2, 2010), plaintiff was 5 months short of his 50th birthday at the time of his decision. The court held that the ALJ erred by not making the necessary factual finding of whether plaintiff falls within a borderline situation because he was 5 months short of his 50th birthday at the time of the ALJ decision. Strauser, Doc. 14 at 14-17.

In the case of Damian v. Astrue, Case No. 06-1132-JTM (D. Kan. March 26, 2007), plaintiff was 5 months and 5 days short of

his 45th birthday, at the time of the ALJ's decision. Relying on Daniels and Cox, the court held that the ALJ erred by not making the necessary factual finding of whether plaintiff falls within a borderline situation because he was just over 5 months short of his 45th birthday at the time of the ALJ decision. Damian, Doc. 15 at 6-8.

The ALJ clearly erred by failing to consider or address the issue of whether plaintiff fell into a borderline situation. Daniels held that a person within 65 days short of the next age category fell within a borderline situation. If plaintiff falls within a borderline, the ALJ must next consider which age category on either side of the borderline best describes the claimant. Daniels, 154 F.3d at 1136. The court must examine the impact, if any, if plaintiff is considered in the next age category of closely approaching advanced age (50-54).

In the case before the court, the ALJ stated the following:

> Based on the vocational expert's testimony, the undersigned concludes that, if the claimant stopped the substance use, she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of 201.19 [which indicates a person with previous skilled or semi-skilled work experience, but skills not transferable].

(R. at 36, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, emphasis added). In light of plaintiff's additional limitations

10

beyond that of sedentary work, the ALJ only utilized the grids as a "framework" to determine whether sufficient jobs remained within plaintiff's range of residual functional capacity (R. at 30-31, 35-36). See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

However, for a person closely approaching advanced age (50-54), grid 201.10 [which indicates a person with previous skilled or semi-skilled work experience, but skills not transferable] directs a decision of disabled, while grid 201.11 [which indicates a person with previous skilled or semi-skilled work experience, but skills transferable] directs a finding of not disabled. Although the ALJ stated that transferability of job skills is not material to the determination of disability (R. at 35) which is true for a younger person age 45-49, the ALJ did use grid 201.19 as a framework, which indicates a person with previous skilled or semi-skilled work experience, but skills not transferable (R. at 36). Furthermore, the vocational expert (VE) testified that plaintiff did not have any skills transferable to sedentary work (R. at 70). Thus, had the ALJ considered the plaintiff in the next age bracket, the grids would have directed a finding of disability if it was determined that her job skills were not transferable.

Defendant argues that application of the grids is discretionary and not mandatory because plaintiff had both

11

exertional and non-exertional limitations, and the ALJ relied on vocational expert (VE) testimony in finding that plaintiff could perform other work in the national economy. First, the grids provide that:

> <u>However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone</u> and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished…

20 C.F.R. part 404, Subpart P, App. 2, § 200.00(e)(2)(2012) (emphasis added).

Second, citing to the above grid rule, this issue was addressed in the case of <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1115-1116 (9th Cir. 2006). In that case the court held that, where application of the grids directs a finding of disability, that finding must be accepted by the Commissioner whether the impairment is exertional or results from a combination of exertional and non-exertional impairments. Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and nonexertional impairments, they may not be used to direct a conclusion of nondisability. In other words, where a person with exertional

and nonexertional limitations is disabled under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately. Therefore, under no circumstances may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines. Id.

In Lounsburry, the court indicated that the ALJ erred by declining to apply the grids, except as an advisory framework, because the claimant's RFC was further reduced by severe non-exertional, postural limitations. The court held that the ALJ should have first inquired if the claimant was disabled under the grids on the basis of her exertional limitations alone. The court also held that the ALJ erred because the ALJ relied on testimony from the VE in concluding that the claimant was not disabled. The court stated that the ALJ should not have substituted extrinsic evidence for the mandatory analysis under the grids. 468 F.3d at 1116. Therefore, in the case before the court, if grid 201.10 was the appropriate grid to apply in this case, plaintiff would be found disabled regardless of any VE testimony.

The case law clearly establishes that the ALJ erred by not addressing whether the plaintiff is of borderline age before utilizing the grids. As in Daniels, the ALJ in this case never

13

addressed the issue of whether plaintiff fell within a borderline situation, or the issue of whether she should be considered in the next age bracket. The ALJ erred by not making the necessary factual findings on these issues. For this reason, the court finds that substantial evidence does not support the ALJ's finding that plaintiff can perform other work in the national economy. When this case is remanded, the ALJ must make a factual determination of whether plaintiff falls within a borderline situation, and, if so, whether she should be considered in the next age bracket. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence. Daniels, 154 F.3d at 1136. If plaintiff is considered in the next age bracket, the ALJ will have to make a determination of how to categorize her previous work experience, specifically the issue of transferability of job skills.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 9th day of July, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge